IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID C. PERORAZIO**,

        Petitioner,

v.                                                                     **Civil Action No. 5:10cv48**
                                                                                   **(Judge Stamp)**

**JOEL ZIEGLER, Warden,**

        Respondent.

**REPORT AND RECOMMENDATION**

**I.   Procedural Background**

The *pro se* petitioner initiated this case on April 19, 2010, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Doc. 1). The petitioner paid the required $5.00 filing fee on April 20, 2010. (Doc. 4). In the petition, the petitioner challenges the Bureau of Prisons' ["BOP"] decision to place him in a Residential Release Center ["RRC"] for less than the maximum allowable twelve months.

On April 21, 2010, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to file an answer to the petition. (Doc. 5). The respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Response to Show Cause Order on May 21, 2010. (Doc. 10). Because the petitioner is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on May 24, 2010. (Doc. 12). On June 8, 2010, the petitioner filed a response (Doc. 19) and Memorandum in Support (Doc. 17). With the permission of the Court, on June 21, 2010, the petitioner filed a supplemental exhibit to his petition.

(Doc. 20) (A copy of the petitioner's Central Office Administrative Remedy and Response). This case is before the undersigned for a report and recommendation on the respondent's motion.

## II. The Petitioner's Conviction and Sentence

The petitioner is currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia ("FCI Morgantown"). He is serving a 36 month sentence imposed by the United States District Court for the Northern District of Ohio. (Doc. 1, Att. 1 at 1). The petitioner's projected release date is November 15, 2010. (Doc. 14, Ex. 1 at ¶ 8). He has been recommended for placement in a RRC for the last 30-60 days of his incarceration. *Id.* at ¶ 11.

## III. Contentions of the Parties

**A. The Petition**

In his petition, the petitioner asserts that the BOP determined his RRC placement in contravention to the mandate of the Second Chance Act. (Doc. 1, Att. 1 at 2). He further asserts that the BOP determined his RRC placement date in bad faith and without any genuine attempt to comply with the law. *Id.* The petitioner next asserts that the BOP labors under a financial conflict of interest with regard to RRC placement decisions. *Id.* Finally, the petitioner asserts that the BOP abused its discretion by issuing form denial of administrative appeals of these matters. *Id.*

In support of his petition, the petitioner asserts that the Second Chance Act made three significant changes to RRC assessment decisions. *Id.* at 4. First, the petitioner asserts that the Act doubled the maximum time allowed in an RRC to 12 months. *Id.* Second, he contends that the Act requires placement decisions be made on an individual basis. *Id.* Third, he contends that review must be made considering the five factors listed in 18 U.S.C. § 3621(b) and so as to give an inmate

2

the greatest likelihood of successful reintegration into the community." *Id.* The petitioner contends, however, that the BOP has impermissibly capped RRC placement at six months. *Id.* In support of this claim, the petitioner asserts that in memorandums and at hearings the BOP has stated its belief that six months is normally enough time for any inmate to successfully prepare to transition back into society. *Id.* at 4-5. The petitioner asserts that this six month presumption violates the purpose and spirit of the Second Chance. *Id.* at 5. He further asserts that such improper practices were applied to his RRC placement assessment, thus violating his statutory and constitutional rights. *Id.*

In further support of his petition, the petitioner asserts the following grounds for relief:

(1) Title 18 U.S.C. § 3621(b) requires consideration of five factors to individually assess an inmate's RRC placement needs and that the respondent failed to consider such factors when rendering his RRC placement decision.

(2) Based on the Third Circuit's opinion in <u>Strong v. Schultz</u>, 599 F.Supp2d, 556, 559 (D.NJ 2009), he is being treated unequally in violation of his constitutional rights.

(3) The BOP's presumptive RRC placement cap of six months constrains discretion, is an abuse of discretion and violates an inmate's statutory rights.

*Id.* at 5-8.

As to ground one, the petitioner asserts that the BOP failed to consider his individual factors when assessing his RRC placement. *Id.* at 5-6. As to ground two, the petitioner asserts that in the Third Circuit, the BOP may not consider the six month presumptive cap on RRC placement. *Id.* at 7. Thus, the petitioner asserts that he is not being treated the same of other similarly situated inmates. *Id.* As to ground three, the petitioner asserts that administrative decisions cannot be upheld if they are arbitrary, capricious or an abuse of discretion. *Id.* Moreover, he asserts that

3

administrative decisions must be supported by substantial evidence and that the Court must apply a de novo standard of review where there is an inherent conflict of interest. Id. at 7-8. The petitioner asserts that because staff abused its discretion in assessing his RRC placement determination, his statutory and constitutional rights were violated. *Id.* at 8.

**B.     The Respondent's Response and Motion**

In response to the petition, the respondent first argues that the petition should be dismissed because the petitioner has no standing to challenge the BOP's discretionary allocation of appropriated funds. (Doc. 14 at 4). Second, the respondent argues that the BOP's determination regarding the duration of the petitioner's RRC placement is not subject to judicial review. *Id.* at 6. Next, the respondent contends that the BOP did not abuse its discretion with regard to its RRC review and referral of the petitioner's case pursuant to the Second Chance Act. *Id.* at 7-11. Fourth, the respondent argues that the matter should be dismissed because the BOP conducted an appropriate review of the petitioner's case and made an appropriate RRC referral recommendation. *Id.* at 9-10. Finally, the respondent argues that the petition should be dismissed as moot since the petitioner has received the only relief he is entitled to - consideration of his halfway placement in accordance with the factors delineated in 18 U.S.C. § 3621(b). *Id.* at 11-15.

**C.     The Petitioner's Response**

In his response, the petitioner asserts that the respondent's answer is riddled with inaccuracies and quotes policy statements which are not relevant to RRC placement determinations. (Doc. 16 at 2). He further states that although he submitted appropriate documentation concerning his individualized need for RRC placement, that information was not considered. *Id.* Next, the petitioner asserts that the respondent failed to address his central argument, provided the court with

4

misrepresentations of factual data, omitted pertinent information and failed to refute the central facts of the case. *Id.*

With regard to the respondent's argument that he has no standing to challenge the BOP's discretionary allocation of appropriate funds, the petitioner asserts that the BOP failed to address whether its decision-making process is corrupted by improper financial motives. *Id.* at 3-4. With regard to whether the BOP's RRC decision is subject to judicial review and whether it abused its discretion in making the petitioner's RRC referral recommendation, the petitioner asserts that the Court's review of such decisions is *de novo*. *Id.* at 4-5. He then reiterates the reasons why the BOP erred in making his RRC placement decision and why he believes he is entitled to more time. *Id.* at 7-8. In addition, he contends that the respondent is wrong to suggest that a case managers professional knowledge is greater than that of the Court. *Id.* at 9. As to the respondent's mootness argument, the petitioner asserts that he has filed factual data and other evidence which proves that his constitutional rights were violated. *Id.* at 10. He also asserts that the evidence clearly shows that he did not receive proper review of his RRC placement and his case is not moot. *Id.*

## IV. <u>The Second Chance Act</u>

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." <u>See</u> 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known

5

as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) (BOP may consider factors in addition to those identified in 3621(b)). The factors identified in 18 U.S.C. 3621(b) are as follows:

>  (1) the resources of the facility contemplated;
> 
>  (2) the nature and circumstances of the offense;
> 
>  (3) the history and characteristics of the prisoner;
> 
>  (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> 
>  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

### V. Analysis

#### A. 18 U.S.C. § 3625

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the

> reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerate in 18 U.S.C. § 3621(b), as outlined previously hereint. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

**B.  Merits of Petitioner's Claim**

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear

7

constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

The petitioner argues that memorandums issued by the BOP negate the provisions of the Second Chance Act, and effectively limit RRC placements to six months or less. In addition, the petitioner argues that statements made by Harley Lappin, the Director of the BOP, clearly establish that a financial conflict of interest prevents the BOP from meaningful review and placement of inmates in an RRC facility.

Although the petitioner does not attach the memoranda, the undersigned has reviewed numerous cases dealing with challenges to RRC placements under the Second Chance and has determined that on April 14, 2008, the BOP issued a memorandum entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," which instructed that RRC placement be based on individualized review of each inmate's case. The April 14, 2008 memorandum notes that, under the Act, the- pre-release RRC placement time frame is increased to a maximum allowable 12 months. It further states that:

> While the Act makes inmates eligible for a maximum of 12 months pre-release placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Strong v. Schultz, 599 F.Supp2d 556, 559 (D.NJ 2009). In addition, the BOP issued another memorandum on September 3, 2008, which describes the terms of the Second Chance Act and states generally that [t]he BOP's goal is to place inmates in RRCs for the amount of time necessary to provide the greatest likelihood of successful re-entry into the community." Bernard v. Roal, 2010

8

WL 2308198 (S.D.N.Y). This second memorandum concludes:

> Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for pre-release RRC placement, as 12 months, BOP staff are reviewing each inmate for pre-release RRC placement 17-19 months before the inmates projected release date. Notwithstanding the statutory cap of 12 months, it is the BOP's experience that inmate's re-entry needs can usually be met with 6 months or less in an RRC. **An RRC placement beyond 6 months will only be approved upon a showing of an inmate's extraordinary and compelling re-entry needs**. The BOP will continue to balance each inmate's individual needs with the agency's duty to use its limited resources judiciously and to provide re-entry services as to many inmates as possible.

*Id.*

Finally, on October 21, 2009, the BOP issued a regulation which provides as follows:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, with the time-frames set forth in this part.

28 C.F.R. § 570.22.

In the two years since the Second Chance Act was passed, courts have frequently examined the BOP policy statements implementing the Act. In particular, much of the recent litigation in this field has focused on whether policy guidance that (1) notes that many inmates can be successfully integrated into society in 180 days or less; and (2) requires regional director approval for placements in excess of six months violate the Act by creating unwarranted institutional and bureaucratic obstacles to 12-month placements.

"The majority view, reflected in numerous trial court opinions, and in the only appellate court decision to have considered this issue, holds that the Bureau of Prisons' requirement of regional director approval, and the agency's stated view that many inmates can have their needs

9

meet [sic] through 180-day RRC placements, do not violate the Act." Ramos v. Holt, 2010 WL 2471707 (M.D.Pa.) (collecting cases). In reaching this conclusion, the opinions have reasoned that these policies reflect the broad discretion given the BOP to implement the Act. Therefore, these cases find nothing fundamentally objectionable about the policies "provided that each inmate receives the individualized consideration of this RRC placement called for by the Act." Id.

The undersigned recognizes that two cases have reached an opposite conclusion. See Kreuger v. Martinez, 665 F.Supp.2d 477, 482-83 (M.D.Pa. 2009); Strong v. Schultz, 599 F.Supp.2d at 563.[1] Kreuger concluded that "the BOP has functionally placed a lid on the discretion that it wants staff to exercise," and that "the institutional preference for a RRC placement of six months or less...is contrary to the apparent purpose of the Second Chance Act. 665 F.Supp.2d at 483. Strong reached a similar conclusion and also found that the requirement that written correspondence be obtained of the Regional Director "impermissibly constrains staff's discretion." 599 F.Supp.2d at 563.

---

[1] In the petition, the petitioner asserts that his equal protection rights have been violated because he is being treated differently than inmates in the Third Circuit where Kreuger and Schultz originate. However, to be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

Here, the petitioner has failed to show that he is similarly situated with those inmates who have received the benefit of the Kreuger and Schultz decisions. Quite simply, while Kreuger and Schultz may be persuasive authority in other jurisdictions, at this time, they are only binding within the Third Circuit. The petitioner is not incarcerated within the Third Circuit. Thus, he is not situated the same as those inmates who have thus far received a benefit from those decisions. For that same reason, the petitioner cannot show that his alleged unequal treatment is a result of intentional or purposeful discrimination. Instead, any "unequal treatment" is simply a matter of location. Accordingly, the petitioner's equal protection claim is without merit and should be denied.

However, the Second Chance Act does not vest discretion in "staff"but instead in the Director of the BOP. Therefore, it is consistent with the Act for the BOP to require the involvement of a specific individual subordinate to the director in exercising that discretion. Bernard, *supra*. Furthermore, the memoranda's requirement for "extraordinary" showing for placements longer than six months has been upheld as consistent with the exercise of administrative discretion because it constitutes "a standard for deciding whether to grant a request for extended placement in an RRC." *Id.* (collecting cases). Finally, the limitation on access to the RRC "is rationally related to one of the statutory factors which govern prison placements; namely, the allocation of limited available prison resources." McDonald v. Obama, 2010 WL 1526443 (M.D. Pa. Mar. 15, 2010) at *8 (citing 18 U.S.C. § 3621(b)). Accordingly, the undersigned has concluded that to the extent the petitioner rests his argument on BOP's memoranda, the same fails to state a basis for a grant of habeas corpus.

The undersigned has also considered the petitioner's allegation that the "heart of the matter [is a] financial conflict of interest." In support of this argument, the petitioner cites to the testimony of Harley Lappin before the United States Sentencing Commission regional hearing in Austin, Texas on November 20, 2009. In his statement, Mr. Lappin noted the following:

> The Second Chance Act expands the Bureau's authority to place inmates into RRCs by extending the time limit from the 10% (not to exceed six months) to 12 months and authorizing the agency to place inmates with short sentences (12 months or less) directly into RRCs for service of their entire term of imprisonment. Based on the mission of the agency – to confine offenders in institutions that are secure and cost efficient and provide opportunities to prepare for reentry – the Bureau of Prisons rarely uses RRCs for direct court commitments and rarely transfers inmates to RRC for prerelease services for more than 7 months. Most inmates with short sentences are appropriately placed in federal prison camps, which are minimum security, much less costly than RRCs and offer a wide variety of inmate programs; and most releasing offenders receive the necessary transitional assistance in three to four months at an RRC. While it is certainly desirable for offenders to remain with their families in the

> community for extended periods of time, such placements cannot be justified within the agency mission as cost efficient and necessary to address reentry needs.

(Doc. 1, Ex. X at 9-10).

Although not specifically articulated, it would appear that the petitioner is arguing that this statement is evidence of unconstitutional conduct or evidence that the BOP has acted outside the scope of its authority, thus authorizing this Court to review the substantive decision on his RRC placement. The petitioner cites no case law to support his argument regarding a financial conflict of interest, and the respondent argues that the petitioner has no standing to challenge the allocation of appropriated funds. Regardless of standing, however, Mr. Lappin's statement clearly does not reflect the type of financial conflict of interest which would prompt the courts to review agency decisions. As Director of the BOP, Mr. Lappin has a legitimate right to be concerned with budgetary constraints. However, the decision to place an inmate in an RRC for less than the maximum of twelve months provides no financial benefit to the staff members making the referral. Accordingly, the petitioner can show no personal interest, financial or otherwise, that would raise constitutional concerns with his RRC placement.

Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In recommending that 30-60 days would be a sufficient amount of time for the petitioner to take full advantage of the transitional services and programs in the RRC to facilitate his transition back into the community, staff specifically noted that: (1) there are available community corrections is his release area; (2) the nature and circumstances of the petitioner's offense are eligible for RRC placement; (3) the history and characteristics of the petitioner are: he has an established residence and community ties, he has a high school diploma and

master's degree and was previously employed; (4) the sentencing court did not make any statement in the judgment and commitment order regarding community corrections placement; and (5) there is no pertinent policy by the sentencing commission. Resp't Ex. 1 at Att. F. (Petitioner's RRC Referral Form). Moreover, the Referral Form for RRC Placement must be read in conjunction with the petitioner's Progress Reports and other documents relating to the petitioner which were sent to the Community Corrections Office for consideration in making its recommendation to a particular RRC for placement. *Id.* at Att. B-D; Resp't Ex. 1 at ¶ 7-10 (Declaration of Lisa L. Little). Taking all of ths information into account, the petitioner's Unit Team determined that 30-60 days of transitional RRC placement time would be of sufficient duration for reintegration into his community. Resp't Ex. 1 at Att. F.

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending that he be placed in an RRC for a period of 30-60 days. The fact that the petitioner's circumstances under that review could warrant two different interpretations of his need for RRC placement does not establish that the BOP was either derelict in its duties or wrong. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

## VI.  Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc. 10) be **GRANTED,** and the petitioner's § 2241 petition (Doc. 1) be **DENIED** and **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this Report and

13

Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to counsel of record via electronic means.

DATED: July 28, 2010

*[signature]*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE